UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CONNIE TUGGLE BRIDGE, | ) |
| Plaintiff, | ) Jury Demanded |
| v. | ) No. _____ |
| COMMONSPIRIT HEALTH d/b/a CHI MEMORIAL | ) |
| Defendant. | ) |

## COMPLAINT

Comes Plaintiff Connie Tuggle Bridge and sues Defendant CommonSpirit Health d/b/a CHI Memorial for unlawful employment actions pursuant to the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.* ("FMLA"), the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"), and as amended, the Age Discrimination in Employment Act, 29 U.S.C. §621, et. seq. ("ADEA"), and the Tennessee Human Rights Act, Tenn. Code Ann. §4-21-101, et seq. ("THRA"). Plaintiff would show unto the Court as follows:

### I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and the federal statutes that form the basis of her federal claims (cited in the introductory paragraph).

2. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because they form part of the same case and controversy as her federal claims.

3. The actions giving rise to this Complaint occurred in Hamilton County, Tennessee, and venue is proper in this district pursuant to 28 U.S.C. §1391.

## II. NATURE OF PROCEEDING

4. This is a proceeding for back pay; liquidated damages; reinstatement or front pay in lieu of reinstatement; the value of all employee benefits; compensatory damages; mental and emotional distress; pre- and post-judgment interest; attorney fees and costs; punitive damages; and for other damages as may be necessary (or that may be permitted) to effectuate the purposes of the laws relied upon herein.

## III. THE PARTIES

5. At all relevant times at issue in this lawsuit, Plaintiff was a resident of Hamilton County, Tennessee; was employed by Defendant in Hamilton County, Tennessee; and was an "eligible employee" within the provisions of the FMLA, namely 29 U.S.C. § 2611(2).

6. Defendant CommonSpirit Health d/b/a CHI Memorial is a Colorado Corporation with its principal place of business in Illinois that does extensive business in Hamilton County, Tennessee. It is an "employer" within the meaning of, and it is subject to, the provisions of the FMLA, ADA, ADEA, and THRA.

## IV. FACTUAL BASES OF PLAINTIFF'S CLAIMS

7. Plaintiff was employed by Defendant for over 25 years until her recent termination in March of 2023.

8. Plaintiff was successfully employed by Defendant for many years as an administrative assistant in the pathology department.

9. Plaintiff was born in 1957 and at the time of the events relevant to this case, she was 64 years old.

10. Upon information and belief, Plaintiff was the oldest employee in the pathology department.

2

11. At the time of Plaintiff's termination, she was supervised by Tim Anderson, who was significantly younger.

12. In the months leading up to Plaintiff's termination, he asked Plaintiff about her plans for retirement and told her that a significantly younger lab tech whom Plaintiff had been training, McKenna Deifenderfer, wanted Plaintiff's job.

13. Mr. Anderson also made comments about the age of employees in the department. For example, when describing the department in a group meeting, he would compare it to a box of crayons. In so doing, he pointed out that, over time, we all "get dull." He tried to say that dull crayons are "still pretty," but it was clear to Plaintiff that he was making a negative comment directed towards older employees.

14. In January of 2023, Plaintiff's 83-year-old mother was diagnosed with breast cancer and was required to undergo surgery and subsequent treatment.

15. Plaintiff was needed to care for her mother following her mastectomy. As such, Plaintiff requested permission to temporarily work remotely (three days per week from home and two days per week in office) during a brief period following her mother's surgery.

16. Plaintiff had observed other pathology employees who were permitted to work from home as needed.

17. For example, younger administrative assistants, such as Megan Wilson and Kaitlyn Patterson, were permitted to work from home when needed to care for their young children.

18. As such, Plaintiff requested permission to work remotely (part remote work and part in person work) to help care for her mother for a temporary period.

19. Mr. Anderson initially told Plaintiff she was not eligible for this unless she was a salaried employee.

3

20. Following that, Mr. Anderson eventually said she was eligible and that it would be approved.

21. However, two days before the surgery date, Mr. Anderson asked Plaintiff if she could just **not** go on leave or assist her mom and instead continue working her regular hours in the office until "they figured things out."

22. Mr. Anderson told Plaintiff that the directors, Angie Stiggins and Anne Durham, would not approve her request to work remotely.

23. Consequently, although younger employees were permitted to work from home, Ms. Bridge was forced instead to apply for FMLA.

24. In these conversations with Mr. Anderson, Plaintiff questioned this and specifically asked why it was permitted for others who were younger.

25. Although Plaintiff applied for FMLA, she also challenged Ms. Durham about the denial of her remote work request. She asked Ms. Durham why this request was being denied for her. In response, Ms. Durham said that the department was dealing with PHI and could not work remotely. She added that if they permitted Plaintiff to work remotely, they would have to let everyone. Of course, a number of people were working remotely throughout the Covid-19 pandemic and younger employees had flexibility to work at home, all despite dealing with sensitive PHI.

26. Defendant reacted negatively to Plaintiff's need for leave and her questions about why it was permitted for younger employees.

27. Because she was denied remote work, Plaintiff went out on continuous FMLA leave from February 23 through March 24, 2023. Because her mother needed additional care relating to

4

post-surgery cancer treatments, Plaintiff also applied for intermittent FMLA to use as needed after her return. It was approved by HR.

28. Sadly, on her first day after returning from continuous FMLA leave, Plaintiff was told that her job was being eliminated.

29. Plaintiff was stunned—she had worked for Defendant for over 25 years.

30. Plaintiff asked about whether there were other jobs available for which she could apply and was told she had to wait 3 months.

31. Upon information and belief, other younger employees were permitted to apply immediately for other available jobs.

32. Subsequent to her alleged job elimination, Plaintiff asked for Defendant to provide disclosures required under the Older Workers Benefit Protection Act, including a list of all employees whose jobs were affected in the relevant decisional unit.

33. In response, Defendant provided only a partial list. The partial list provided, however, showed that the oldest employees in the department had been selected for job elimination and the entire remaining department was under the age of 40 (with the bulk being in their 20s).

34. Defendant has offered false and pretextual reasons for the alleged job elimination.

35. Defendant stated to the EEOC that Plaintiff was selected because she was the only administrative assistant in the pathology department.

36. That was inaccurate. Indeed, both Kaitlyn Patterson and McKenna Deifenderfer had served as and represented publicly that they were administrative assistants in that department.

37. Upon information and belief, Plaintiff was replaced by a younger employee.

38. Plaintiff has been damaged as a result of the conduct and actions described herein.

39. Defendant is responsible for the acts of its supervisory agents.

40. As a result of Defendant's conduct, Plaintiff filed a Charge of Discrimination with the EEOC on May 12, 2023 bearing Charge No. 494-2023-02460 asserting claims of discrimination (based upon age, association with a disabled person, or FMLA) and retaliation. For the same, Plaintiff received a Notice of Right to Sue on November 30, 2023.

### V. PLAINTIFF'S CLAIMS

COUNT ONE: FMLA Interference and Retaliation

41. At all times relevant, Plaintiff was an "eligible employee" as defined at 29 U.S.C. §2611(2).

42. At all times relevant, Defendant was an "employer" as defined at 29 U.S.C. §2611(4)(A).

43. Plaintiff mother suffered from a "serious health condition" as defined at 29 U.S.C. §2611(11) and 29 C.F.R. §825.115(c).

44. Due to Defendant's decision to deny her the ability to work remotely, Plaintiff needed medical leave to care for her mother.

45. Defendant tried to get Plaintiff to find someone else to care for her mother so that she would not have to take this medical leave.

46. That was not an option, so Plaintiff could not comply with Defendant's request.

47. Consequently, Plaintiff took continuous FMLA leave.

48. Plaintiff also applied for intermittent FMLA leave so she could continue to render necessary care to her mother after her return to work and because Defendant would not permit her to work remotely.

49. The day she returned from FMLA leave, Plaintiff was terminated.

50. By not restoring her to work, Defendant unlawfully interfered with Plaintiff's reinstatement rights under the FMLA in violation of 29 U.S.C. §2615(a)(1).

51. Likewise, Defendant retaliated against Plaintiff and her leave was a negative factor in the same in violation of 29 U.S.C. §2615(a)(2).

52. Defendant's actions were willful inasmuch as Defendant's decisionmakers (and those approving the termination) were aware that it is illegal to retaliate due to an employee's taking FMLA-qualifying leave.

COUNT TWO: ADA Discrimination

53. At all times relevant herein, Plaintiff's mom was a qualified individual with a disability within the meaning of the ADA inasmuch as Plaintiff's mom had an actual disability (cancer) or a record of disability (history of cancer) and Defendant was aware of that.

54. Plaintiff was qualified for her position with Defendant.

55. Plaintiff was subject to an adverse employment action—termination.

56. Plaintiff's termination occurred shortly after it was communicated that she needed to work remotely to care for her, or, when that was denied, take FMLA leave for the same.

57. Defendant did not want Plaintiff to work remotely and/or take leave at that time and, as such, perceived her mom's disability as a burden upon it.

58. As such, as the burden continued, Defendant terminated Plaintiff.

59. Defendant then attempted to cover up that reason for Plaintiff's termination and have provided pretextual reasons for it after the fact.

60. Upon information and belief, Defendant unlawfully believed that Plaintiff's mom's disability created an undue distraction/burden upon Plaintiff.

61. By discriminating against Plaintiff due to her mother's disability ("association discrimination") and terminating Plaintiff's employment for the same, Defendant violated the ADA, specifically 42 U.S.C. §12112(a) and (b)(4).

COUNT THREE (ALTERNATIVE): Age Discrimination and Retaliation

62. At the time of her termination, Plaintiff was the oldest employee in her department.

63. At some point in her last year of employment, Mr. Anderson decided that he wanted a younger employee, McKenna Diefenderfer, to take over Plaintiff's job.

64. As such, he had Plaintiff train Ms. Diefenderfer and asked Plaintiff when she was planning to retire. He also pointedly told her that Ms. Diefenderfer wanted her job.

65. As outlined, Plaintiff asked permission to remotely to care for her mother.

66. This was denied to Plaintiff even though younger employees in the department, such as Megan Wilson, Kaitlyn Patterson, and the pathology transcriptionists were permitted to work from home or remotely.

67. When it was denied to Plaintiff, Plaintiff questioned both Mr. Anderson and Ms. Durham about why it was permitted for the younger workers.

68. Both Mr. Anderson and Ms. Durham reacted negatively.

69. Shortly thereafter, Plaintiff's job was eliminated.

70. Plaintiff was replaced with an employee who was significantly younger.

71. Defendant has offered false reasons for Plaintiff's termination.

72. As such, Plaintiff was terminated due to her age and/or her complaints of being denied remote work as compared to the younger employees.

73. As such, Defendant has acted in violation of the ADEA and the THRA, both of which prohibit age discrimination and retaliation for complaints about the same.

74. In engaging in all of the acts herein, Defendant acted maliciously, intentionally, fraudulently or recklessly towards Plaintiff and is liable for punitive damages.

## VI. DAMAGES

75. As a result of the wrongful actions of Defendant as described above, Plaintiff has suffered both financially and emotionally. In particular, Plaintiff has lost and will continue to lose wages and valuable employee benefits. In addition to the actual and financial loss Plaintiff has sustained, she has suffered emotional grief because of Defendant's illegal actions.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

a. That the Court issue and serve process on Defendant and require Defendant to answer within the time prescribed by law;

b. That Plaintiff be awarded back pay damages and all lost benefits of employment;

c. That the Court issue an injunction requiring Defendant to re-employ Plaintiff at an equivalent job with all employment rights and benefits to which she would have been entitled but for her discharge, and without harassment or illegal condition imposed on her job, or, in the alternative, front pay and benefits in lieu of reinstatement;

d. That Plaintiff be awarded liquidated damages;

e. That Plaintiff be awarded compensatory damages;

f. That Plaintiff be awarded punitive damages;

g. Plaintiff be awarded pre- and post-judgment interest;

h. That Plaintiff be awarded attorney fees and costs, and such other and further relief as the Court deems proper; and

i. That a jury try all claims and issues triable by a jury.

Respectfully submitted,

MIKEL & HAMILL PLLC


By: _s/ *Donna J. Mikel*_
      Donna J. Mikel, BPR#020777
      Attorney for Plaintiff
      620 Lindsay St., Suite 200
      Chattanooga, TN 37402
      (423) 541-5400
      dmikel@mhemploymentlaw.com